CARPENTER *v.* WALKER.

4-5751                              138 S. W. 2d 68

Opinion delivered January 22, 1940.

*Chris Carpenter* and *J. M. Brice,* for appellants.

*J. M. Henderson, Jr.,* and *Botts & Botts* for appellees.

HUMPHREYS, J. This is an appeal from a decree of the chancery court of Arkansas county wherein appellants were plaintiffs and appellees were defendants and cross-complainants.

The issues involved were:

First, whether a quit-claim deed executed by Nelia Walker to Carpenter on the 19th day of May, 1936, was intended as a deed absolute, as shown on its face, or as a mortgage or security for the payment of money upon the following described real estate, in the county of Arkansas, state of Arkansas, to-wit:

"Commencing at the northwest corner of block eight (8), Carpenter & Spratlin's Addition to the town of DeWitt, Arkansas, thence east 150 feet for the point of beginning of tract conveyed herein, thence south 31 feet to the street, thence east 150 feet, thence north 31 feet, thence west 150 feet, to point of beginning."

Second, if a mortgage, to determine whether said mortgage is a prior lien to the lien of a mortgage on said land executed by Nelia Walker to G. W. Botts on the 14th day of January, 1936.

The trial court, after hearing the evidence in the case, found that the quit-claim deed of date May 19, 1936, was intended to secure the payment of money which Carpenter had advanced to pay accrued monthly payments and to keep up monthly payments which Nelia Walker was required to pay on a mortgage covering the same property that she had executed to the HOLC on August 25, 1934, for $337.03, payable in monthly payments of $6.36.

The trial court also found that on January 14, 1936, Nelia Walker executed and delivered a mortgage to G. W. Botts to the same property to secure interest-bearing notes totaling the sum of $71.25.

The trial court also found that while the mortgage executed to Botts was not of record when Nelia Walker

executed the deed to Carpenter of date May 19, 1936, which was recorded on day same was executed, and that at the time Carpenter received the deed and recorded same he had actual knowledge or notice of the execution and delivery of the Botts' mortgage.

Based upon these findings the court made findings, in substance, that Nelia Walker was indebted to G. W. Botts in the sum of $81.11, and to Carpenter in the sum of $167.18; that same constituted liens on the property aforesaid subject to a lien in favor of the HOLC under its mortgage from Nelia Walker and found that subject to the lien of the HOLC, G. W. Botts' lien was prior and paramount to the lien of Carpenter and decreed a foreclosure against said property subject to the mortgage of the HOLC, which is not a party to this suit, and ordered public sale of said property subject to the HOLC mortgage by John Gunnell, clerk and special commissioner of the court, and that the proceeds derived from the sale should be paid out as follows: "1st, The amount due the defendant and cross-complainant, G. W. Botts, in the sum of $81.11. 2nd, The amount due Carpenter in the sum of $247.18 less $80 paid Carpenter by defendant and her tenants leaving a balance *owed* Carpenter of $167.18. 3rd, The residue, if any, shall be paid to the defendant, Nelia Walker, or her attorney of record, J. M. Henderson, Jr."

The record reflects without dispute that Nelia Walker bought the property in question from Lee Coker for about $600 and paid all the purchase money thereon to the grantor from time to time except a balance of $337.03, which she owed him on August 25, 1934, at which time Nelia Walker procured a loan from the HOLC in a sum sufficient to pay the balance of the purchase money; that on that date she executed a mortgage to the HOLC for said amount; that the property had two houses upon it, and according to the decided weight of the evidence, it was worth between $700 and $800; that she occupied one of the houses as her home and rented the other; that she became delinquent on the monthly payments to the HOLC, and on September 12,

1935, she executed a quit-claim deed to Carpenter which secured him for advances he made to pay the HOLC delinquency together with all sums he might advance to keep up monthly payments to the HOLC, taxes, insurance, etc.; that the deed recites on its face that it was to secure the payment of money, and is admitted by the parties to this suit to be a mortgage and not a deed; that this quit-claim deed or mortgage deed was recorded December 19, 1935; that this mortgage was never satisfied of record but instead Nelia Walker executed another quit-claim deed to Carpenter describing the same property described in the first mortgage deed on May 19, 1936, and recorded on the same date, which acknowledged default in payment, terms and conditions of the first mortgage deed and conveyed therein all Nelia Walker's interest in the said property to Carpenter; that on January 14, 1936, Nelia Walker executed and delivered a mortgage to G. W. Botts on the same property to secure notes totaling the sum of $72.75; that G. W. Botts never recorded his mortgage until after this suit was brought and, of course, after both quit-claim deeds were executed by Nelia Walker to Carpenter and which were recorded about the time they were given; that the mortgage executed to G. W. Botts by Nelia Walker described the property as follows: "Middle part of block eight (8) Carpenter and Spratlin Addition to the town, now city, of DeWitt, Arkansas, the property where I am now living in the city of DeWitt, Arkansas county, Arkansas. Southern District."

Nelia Walker testified that at the time of the execution of the second quit-claim deed to Carpenter payments to the HOLC were delinquent and that she was behind on some of her payments to Carpenter who was supposed to be keeping up the monthly payments to the HOLC; that she could not read and could barely sign her name and that Carpenter explained to her that he would give her more time if she would give him another "security paper" or mortgage; that the quit-claim deed, which she signed on May 19, 1936, was prepared by Carpenter and that he took her over to the clerk's office where she

acknowledged same believing at the time that it was an additional security paper; that at the time she and her tenant agreed to pay him $10 a month to make payments to the HOLC which amount she and her tenant paid either in money or work until she was notified by the HOLC that she was in arrears to it at which time she ceased to make the payments; that after executing the security paper she remained in possession of the property and that she made repairs thereon to the extent of $25 for material and hired a laborer to do the work and paid him for it.

Gunnell who took the acknowledgment to the deed or mortgage said that he told Nelia Walker that she was deeding away her property and he thought she understood it, but that he never read the instrument to her.

Carpenter denies that the second quit-claim deed was intended as a mortgage and accounts for the payments she made him thereafter by saying that they were made to him for the rent of the two houses.

G. W. Botts and his secretary testified that after Carpenter took the second deed from Nelia Walker, Carpenter tried to buy the mortgage he, Botts, held against the property and that they could not agree upon a price for same. Carpenter denied that he had any such conversations with G. W. Botts or his secretary or that he offered to buy the Botts' mortgage.

The record is very voluminous and the testimony is argued at length and the appellants and appellees disagree as to the conclusions which should be reached after reading the testimony. The chancellor wrote an opinion which is incorporated in this record analyzing the evidence from which he concluded that the evidence was clear and convincing to the effect that Nelia Walker never at any moment thought or understood that in executing the instrument styled a quit-claim deed on May 19, 1936, to Carpenter she was signing anything more than what she termed a piece of security paper. In the opinion, the chancellor stated: "She did not

know at that particular time what she was signing any more than she did when she signed the so-called quit-claim deed executed by her to Carpenter on September 12, 1935, which the Carpenters now admit is nothing more than a mortgage. Furthermore, it is undisputed from all the testimony in the case that Nelia Walker is an ignorant negro woman, unable to read or write, with the sole exception of writing, with some degree of labor, her name, and she was not only ignorant in this respect, but she was not versed in business affairs in any degree and could not be expected to understand or appreciate the effect of her signature to such an instrument as this, whether it be a quit-claim deed or a mortgage. . . . All that can be made out of the testimony in her behalf, and it is quite convincing, if she was undertaking to get Carpenter to assist her in making the monthly payments due upon her property to the HOLC that were due by virtue of the mortgage she had executed to it in 1934.''

After a careful reading of the testimony ourselves we have concluded that the finding of the chancellor is not contrary to a clear preponderance of the evidence in holding that the deed executed by Nelia Walker to Carpenter on May 19, 1936, was, in fact, intended as a mortgage and not a deed absolute.

The undisputed evidence shows that G. W. Botts' mortgage was never recorded until after this suit was brought. The deeds or mortgages to Carpenter were both placed of record long before the suit was brought and long before Botts' mortgage was recorded. The chancellor found that before Carpenter took the second mortgage deed he knew of the existence of the G. W. Botts mortgage. The chancellor, in his opinion, stated that the second mortgage deed given by Nelia Walker to Carpenter was a voluntary conveyance and without consideration. We think he was in error in so finding. She was not attempting to give her property to Carpenter to defeat her creditors or any of them. She was providing a method or thought she was by which her creditors would be paid by Carpenter and instead of being without consideration the consideration was that

Carpenter should pay her monthly payments to the HOLC. While mortgages are good between parties to them without being recorded, the priority of them depends upon the date they are filed for record. We think the chancellor erred in moving Botts' mortgage up to second place instead of third place. G. W. Botts testified himself that the reason he did not record his mortgage was because it was a third mortgage upon the property and that he thought he would receive no benefit by recording his own mortgage.

The decree of the chancellor will be affirmed in all particulars except the priority given the G. W. Botts' mortgage over the Carpenters' mortgage and in that particular it is reversed and remanded with directions to give priority to the Carpenter mortgage over the G. W. Botts' mortgage.